```
                         UNITED STATES DISTRICT COURT
                         SOUTHERN DISTRICT OF FLORIDA

                         CASE NO. 08-10023-Civ-HIGHSMITH
                                 (05-10021-Cr-HIGHSMITH)
                         MAGISTRATE JUDGE P. A. WHITE
```

JORGE LUIS GARCIA JULIA,        :

    Movant,                     :

v.                              :          REPORT OF
                                           MAGISTRATE JUDGE
UNITED STATES OF AMERICA,       :

    Respondent.                 :
_____

## Introduction

This matter is before the Court on the movant's motion to vacate, attacking his convictions and sentences for forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a U.S. Customs and Border Protection Marine Enforcement Officer ("MEO") while the officer was engaged in or on account of the performance of his official duties, and in the commission of these acts using a deadly and dangerous weapon, to-wit, a vessel, and related offenses entered following a jury verdict in case no. 05-10021-Cr-Highsmith.

The Court has reviewed the motion with supporting memorandum (Cv-DE#s1-2), the government's response (Cv-DE#6), the movant's replies (Cv-DE#s8-9), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

The movant raises the sole claim that he was denied effective assistance of counsel, where his lawyer failed to object to the application of a three level enhancement to the movant's base offense level, pursuant to U.S.S.G. §2A2.2(b)(3)(A), for injury sustained by a U.S. Customs crewman during the chase of the

movant's vessel on the high seas. (Cv-DE#1:5; Cv-DE#2:3).

## Procedural History

Briefly, the movant's convictions arose from events occurring on July 14, 2005, when Marine Enforcement Officers ("MEO") patrolling the waters south of Big Pine Key, Florida, observed a 28-foot Baja, go-fast boat operating without its navigation lights and running approximately 50 miles per hour. (Cr-DE#78:163). After the MEO vessel activated its lights and sirens, the go-fast boat refused to stop, traveling at a high rate of speed and taking hard evasive actions, swerving and turning the vessel back and forth in order to get out of the spotlight. (Cr-DE#78:168-69,242,284). Operators aboard the go-fast vessel refused to comply with orders to stop, making further aggressive turns, which required the MEO vessel to take evasive action to avoid being hit. (Cr-DE#78:171-72). Several warning shots were fired into the air which went unheeded, resulting in the firing of disabling rounds into the go-fast boat's engines. (Cr-DE#78:173-175). Operators aboard the go-fast boat then swung the vessel aggressively around causing it to collide with the MEO vessel. (Cr-DE#78:175).

As a second series of disabling rounds were going to be fired into the go-fast boat's engines, the movant turned his vessel hard to the left, ramming the MEO vessel, causing extensive damage to both vessels. (Cr-DE#78:175-78). As the vessel was rammed, one officer was almost thrown overboard, but was rescued and pulled back onto the vessel. (Cr-DE#78:245,287). Ultimately more disabling shots had to be fired until the MEO vessel was able to get alongside the go-fast boat, at which time it was then boarded by agents. (Cr-DE#78:185,229). The movant and his codefendant were ultimately transferred to the MEO vessel, and taken into custody. (Cr-DE#78:192).

The movant was specifically charged by Indictment with forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a U.S. Customs and Border Protection Marine Enforcement Officer while the officer was engaged in or on account of the performance of his official duties, and in the commission of these acts using a deadly and dangerous weapon, to-wit, a vessel, in violation of 18 U.S.C. §111(b) (Count 1) and forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a U.S. Customs and Border Protection Marine Enforcement Officer while the officer was engaged in or on account of the performance of his official duties, in violation of 18 U.S.C. §111(a) (Count 2). (Cr-DE#3). The movant proceeded to trial where he was found guilty as charged following a jury verdict. (Cr-DE#37).

Prior to sentencing, a PSI was prepared which revealed as follows. Pursuant to U.S.S.G. §2A2.2, the guideline applicable to the offenses of conviction, the base offense level for an offense involving aggravated assault, was set at a level 14. (PSI ¶17). An additional four levels were added pursuant to U.S.S.G. §2A2.2(b)(2)(B) because a dangerous weapon was used, and an additional three levels, pursuant to U.S.S.G. §2A2.2(b)(3)(A), because the victim in the offenses sustained bodily injury. (PSI ¶¶18-19). Pursuant to U.S.S.G. §2A2.2(b)(6), two levels were added because the movant was convicted of violating 18 U.S.C. §111(a)(1),(b). (PSI ¶20). Finally, a six level upward adjustment was given pursuant to U.S.S.G. §3A1.2(c)(1), because during the course of the offense or immediate flight therefrom, the movant or a person for whose conduct the movant is accountable, knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer in a manner creating substantial risk of serious bodily injury. (PSI ¶21). The total adjustment offense level was thus set at a level 29. (PSI §27). The

probation officer also determined that the movant had a total of zero criminal history points, resulting in a criminal history category I. (PSI ¶30). Based on a total adjusted offense level 29 and a criminal history category I, the resulting guideline range was 87 to 108 months in prison. (PSI ¶52).

After receipt of the PSI, but prior to sentencing, defense counsel filed objections to the PSI, arguing that the injury sustained by the MEO did not occur at the time of the assault caused by the collision of the two vessels, but sometime prior thereto. (Cr-DE#s45,46).

On May 1, 2006, the movant appeared for sentencing. (Cr-DE#56). At that time, defense counsel renewed the objections to the PSI, in pertinent part, as to the three-level increase, but the argument was overruled by the court. (Cr-DE#s69:3; Cr-DE#73:3-6). Thereafter, the court sentenced the movant to the low end of the guideline range to a term of 87 months in prison as to Count 1, and a concurrent 12 months in prison as to Count 2, followed by two years supervised release. (Cr-DE#56).

The movant appealed, raising the following claims:[1]

    1. The court erred in not granting the defendant's motion for judgment of acquittal based on sufficiency of the evidence.

    2. The trial court erred by instructing the jury on the definition of "forcible assault."

    3. The trial court erred at sentencing by increasing the movant's advisory guideline range three levels for a minor injury suffered by an officer's failure to properly secure a hatch on

---

[1] The claims are gleaned from the written but unpublished appellate opinion, United States v. La Rosa, et al., 236 Fed.Appx. 584 (11th Cir. 2007) (Cr-DE#84), and from the movant's brief on appeal which can be found on Westlaw, a legal research database, at United States v. Julia, 2006 WL 4733684 (11th Cir. 2006).

his vessel.

On September 11, 2007, the Eleventh Circuit *per curiam* affirmed the movant's convictions and sentences in a written, but unpublished opinion. <u>United States v. la Rosa, et al.</u>, 236 Fed.Appx. 584 (11th Cir. 2007); (Cr-DE#84). Specifically as to the sentencing claim raised in this collateral proceeding, the appellate court affirmed the enhancement on the basis that the injury occurred while the movant was carrying out his felonious assault against the MEOs. <u>United States v. la Rosa, et al.</u>, 236 Fed.Appx. at **6. No petition for certiorari review appears to have been filed. Thus, the judgment of conviction in the underlying criminal case became final at the latest on December 11, 2007, when time expired for seeking certiorari review, 90 days following entry of judgment on direct appeal.[2] This motion to vacate was timely filed less than one year on March 17, 2008.[3]  (Cv-DE#1).

<u>Discussion of the Claim</u>

In this collateral proceeding, the movant raises a sole claim challenging counsel's effectiveness at sentencing. In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.

---

[2]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.  <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate.  <u>Sup.Ct.R</u>. 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

[3]<u>See</u>: <u>Adams v. U.S.</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration. See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

In this collateral proceeding, the movant raises the sole claim that he was denied effective assistance of counsel, where his lawyer failed to object to the application of a three level enhancement to the movant's base offense level, pursuant to U.S.S.G. §2A2.2(b)(3)(A), for injury sustained by U.S. Customs

6

crewman during the chase of the movant's vessel on the high seas.

It should further be noted that the issue regarding the substantive issue underlying this ineffective assistance of counsel claim, to-wit, the lawfulness of the three level enhancement to the movant's advisory guideline range based on bodily injury to an MEO, was raised and rejected on direct appeal, on the specific finding that the claim was without merit. See United States v. la Rosa, et al., 236 Fed.Appx. 584 (11th Cir. 2007; (Cr-DE#84).

Thus, the movant has not demonstrated a change in circumstance, sufficient to warrant relitigation of the claim. Therefore, the presentation of this issue, in this §2255 proceeding, in the guise of an ineffective assistance of counsel claims, adds nothing of substance which would justify a different result. See Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987)(claim raised and considered on direct appeal precludes further review of the claim in a §2255 motion), vacated on other grounds, 492 U.S. 913 (1989); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Webb v. United States, 510 F.2d 1097 (5th Cir. 1975); Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7 Cir. 1994); Graziano v. United States, 83 F.3d 587 (2d Cir. 1996)(Collateral attack on a final judgment in a criminal case is generally available under §2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice.).

Moreover, the claim, as found correctly by the trial and appellate court, fails on the merits. Pursuant to U.S.S.G. §2A2.2(b)(3)(A) (2005), a defendant who commits an aggravated

assault that causes a victim to sustain bodily injury should have his offense level increased by three levels. "'Aggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (*i.e.,* not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." Id., comment (n.1). Specific offense characteristics are determined based on "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that occurred du the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense ... [and] all harm that resulted from the[se] acts and omissions...." U.S.S.G. §1B1.3(a)(1),(3) (2005).

    The record reveals that one of the MEOs crushed his finger while attempting to secure ammunition from the boat's forward cabin while the MEO vessel was chasing the movant's go-fast boat which continued to make aggressive turns that required the MEO commander to take evasive actions to avoid a collision. The district court increased the advisory guideline range three levels finding that the injuries occurred from an aggravated assault. The Eleventh Circuit affirmed the district court's findings, concluding correctly that the "injury occurred while Garcia Julia [movant] was carrying out his felonious assault against the MEOs, and the enhancement was properly applied." United States v. la Rosa, et al., supra.

    Under these circumstances, no showing has been made in this collateral proceeding that any further argument in this regard would have resulted in the court's removal of the three level enhancement and a reduction in the movant's sentence. Thus, the movant can neither satisfy the deficiency or prejudice prong under Strickland and is therefore entitled to no relief on this claim.

Finally, the movant's request for an evidentiary hearing on his claim should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claim raised is unsupported by the record or without merit. Consequently, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that the motion to vacate be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 1st day of October, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Jorge Luis Garcia Julia, Pro Se
     Reg. No. 39193-004
     F.C.I.-Atlanta
     P.O. Box 150160
     Atlanta, GA 30315

     Scott E. Ray, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132